**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

CHERYL MILES,

          Plaintiff,

vs.

LAKEVIEW BIODIESEL, LLC,  and
LAKEVIEW ENERGY LLC,

          Defendants


LAKEVIEW BIODIESEL LLC, and
LAKEVIEW ENERGY LLC,

          Third-Party Plaintiffs

vs.

DAMIEN QUINN, TEXAS TRANSFER &
RECYCLE CENTERS, LLC and
VERLIANT ENERGY, INC.,

          Third-Party Defendants.

Case No. 2:23-cv-00026-CDP

---

**DEFENDANTS' SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES,**
**VERIFIED COUNTERCLAIMS AGAINST CHERYL MILES AND**
**VERIFIED THIRD-PARTY CLAIMS AGAINST DAMIEN QUINN, TEXAS**
**TRANSFER & RECYCLE CENTERS, LLC AND VERLIANT ENERGY, INC.**

COME NOW Defendants Lakeview Biodiesel LLC ("Lakeview Biodiesel") and Lakeview

Energy LLC ("LVE") (collectively, the "Defendants"), and for their Second Amended Answer to

the Complaint, Affirmative Defenses, Verified Counterclaims against Cheryl Miles, and Verified

Third-Party Claims against Damien Quinn, Texas Transfer & Recycle Centers, LLC and Verliant

Energy, Inc., state as follows:

## DEFENDANTS' ANSWER TO COMPLAINT

<u>PARTIES</u>

1.    Plaintiff Miles is a resident and citizen of Utah.

**ANSWER**:  Defendants lack sufficient information and knowledge to form a belief as to the truth or falsity of Paragraph 1 and therefore denies same.

2.    Defendant Lakeview Biodiesel is a foreign limited liability company formed under the laws of Delaware with its principal place of business in Chicago, Illinois.

**ANSWER**:  Defendants admit the allegations of Paragraph 2.

3.    None of Lakeview Biodiesel's LLC members are citizens of Utah.

**ANSWER**:  Defendants admit the allegations of Paragraph 3.

4.    On June 10, 2015, Lakeview Biodiesel registered to conduct business in the State of Missouri.

**ANSWER**:    Defendants admit the allegations of Paragraph 4.

5.    In its Application for Registration of a Foreign Limited Liability Company filed with the Missouri Secretary of State, Lakeview Biodiesel stated the purpose of the company was to "[o]wn and operate a biodiesel production facility."

**ANSWER**:  Defendants admit that Lakeview Biodiesel's Application for Registration of a Foreign Limited Liability Company stated that the purpose *or general character* of the business of Lakeview Biodiesel was: "Own and operate a biodiesel production facility."

6.    Lakeview Biodiesel's production facility is in Moberly, Missouri.

**ANSWER**:  Defendants admit the allegations of Paragraph 6.

7.    Defendant Lakeview Energy is a foreign limited liability company formed under the laws of Delaware with its principal place of business in Chicago, Illinois.

**ANSWER**:  Defendants admit the allegations of Paragraph 7.

- 2 -

8.      None of Lakeview Energy's LLC members are citizens of Utah.

**ANSWER**:  Defendants admit the allegations of Paragraph 8.

9.      On September 30, 2010, Lakeview Energy registered to conduct business in the State of Missouri.

**ANSWER**:  Defendants admit the allegations of Paragraph 9.

10.     In its Application for Registration of a Foreign Limited Liability Company filed with the Missouri Secretary of State, Lakeview Energy stated the purpose of the company was "[b]uying and selling fuel-grade ethanol and biodiesel."

**ANSWER**:  Defendants admit that LVE's Application for Registration of a Foreign Limited Liability Company stated that the purpose *or general character* of the business of LVE was: "Buying and selling fuel-grade ethanol and biodiesel."

11.     On its website, Lakeview Energy states that its "biofuels division has recently acquired a biodiesel facility in Moberly, Missouri. The plant is capable of producing 10 million gallons of biodiesel and 4,000 tons of glycerin." *See* https://www.lakeviewenergyllc.com/about-us (last visited December 22, 2022).

**ANSWER**:  Defendants admit the allegations of Paragraph 11.

12.     On its website, Lakeview Energy identifies the locations of its operations: *See* https://www. lakeviewenergyllc.com/about-us (last visited December 22, 2022).



**ANSWER**:  Defendants deny Paragraph 12 as alleged.  LVE's website states the following, directly above the map in Paragraph 12:  "Lakeview Energy is a renewable energy company based in Chicago with investments in biofuels, agribusiness, and wind energy."

13.    Lakeview Biodiesel's and Lakeview Energy's Missouri registered agent that is authorized to accept service of process is Universal Registered Agents, Inc., 300 B East High Street, Jefferson City, Missouri 65101.

**ANSWER**:   Defendants admit the allegations of Paragraph 13.

<u>JURISDICTION AND VENUE</u>

14.    At all times pertinent to this Complaint, Defendants were in the business of buying and selling fuel-grade ethanol and biodiesel in Missouri, as well as owning and operating a biodiesel production facility in Moberly, Missouri.

**ANSWER**:  Defendants deny Paragraph 14 as alleged.  Defendants further state that LVE does not own or operate the biodiesel facility and that neither LVE nor Lakeview Biodiesel buy or sell ethanol in Missouri.

15.    Defendants regularly transacted business in Missouri, which includes producing, transporting, marketing, buying, and selling biodiesel fuel; derive substantial revenue from their business transactions in Missouri; and have purposely availed themselves of the privilege of doing business in Missouri.

**ANSWER**:  Defendants deny Paragraph 15 as alleged.  LVE does not produce biodiesel fuel.  Lakeview Biodiesel's regularly transacted business in Missouri includes producing, transporting, marketing, buying, and selling biodiesel fuel.  LVE's regularly transacted business in Missouri includes marketing, buying, and selling biodiesel fuel.

- 4 -

16.    Defendants have shipped or participated in shipping biodiesel fuel with the reasonable expectation that the fuel could or would find its way in Missouri through the stream of commerce.

**ANSWER**:  Defendants admit the allegations of Paragraph 16.

17.    Defendants' actions in producing, transporting, marketing, buying, and selling biodiesel fuel in Missouri should have led them to reasonably anticipate being hauled into Court in Missouri.

**ANSWER**: Defendants deny Paragraph 17 as alleged.  LVE does not produce biodiesel fuel.

18.    Defendants have sufficient "minimum contacts" with Missouri that subjecting them to personal jurisdiction in Missouri does not offend traditional notions of fair play and substantial justice.

**ANSWER**:  Defendants admit the allegations of Paragraph 18.

19.    There is complete diversity between Plaintiff and all LLC members comprising Defendants.

**ANSWER**:  Defendants admit the allegations of Paragraph 19.

20.    This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. §1332(a)(1) and §1332(a)(2), as there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

**ANSWER**:  Defendants admit the allegations of Paragraph 20.

21.    This Court is a proper venue for this civil action pursuant to 28 U.S.C. §1391(b) and Local Rules.

**ANSWER**:  Defendants admit the allegations of Paragraph 21.

22.    This Court's exercise of personal jurisdiction over Defendants comports with due process.

**ANSWER**:  Defendants admit the allegations of Paragraph 22.

BACKGROUND

The Promissory Note

23.    On September 1, 2021, Miles, the lender, and Lakeview Biodiesel, the borrower, entered into a Promissory Note.

**ANSWER**:  Defendants deny the allegations of Paragraph 23.  Specifically, while Miles and Lakeview Biodiesel both executed versions of a document entitled "PROMISSORY NOTE secured by Deed of Trust," Defendants deny that there was ever a meeting of the minds on all terms in the Promissory Note and deny that there was ever a mirror-image acceptance of the Promissory Note by both parties, and therefore, no valid contract was formed.

24.    Jim Galvin, President of Lakeview Biodiesel, LLC, signed the Promissory Note on behalf of Lakeview Biodiesel.

**ANSWER**:  Defendants admit the allegations of Paragraph 24.

25.    In addition to serving as President of Lakeview Biodiesel, Jim Galvin serves as the Chief Executive Officer of Lakeview Energy, on the Executive Team of Lakeview Energy, and as a Board Director of Lakeview Energy.

**ANSWER**:  Defendants admit the allegations of Paragraph 25, but affirmatively state that LVE was not a party to the September 1, 2021 Promissory Note that is referenced in this Complaint, or the Deed of Trust that is referenced therein.

26.    The parties agreed that the Promissory Note shall be governed under the laws of Missouri.

**ANSWER**: Defendants deny the allegations of Paragraph 26.  Specifically, while Miles and Lakeview Biodiesel both executed versions of a document entitled "PROMISSORY NOTE secured by Deed of Trust" that indicated it would be governed under the laws of Missouri, Defendants deny that a valid contract was formed because there was never a meeting of the minds on all terms in the Promissory Note and there was never a mirror-image acceptance of the Promissory Note by both parties.

27.    Under the terms of the Promissory Note, Lakeview Biodiesel received $250,000.

**ANSWER**:  Defendants deny the allegations of Paragraph 27.  Specifically, while Miles and Lakeview Biodiesel both executed versions of a document entitled "PROMISSORY NOTE secured by Deed of Trust," Defendants deny that the receipt of any funds were "under the terms of the Promissory Note" because there was never a meeting of the minds on all terms in the Promissory Note and there was never a mirror-image acceptance of the Promissory Note by both parties and therefore, no valid contract was formed. Additionally, Defendants deny that Lakeview Biodiesel received $250,000 from Miles. Defendants specifically state that Miles only transferred $187,000 to Lakeview Biodiesel.

28.    Lakeview Biodiesel agreed that the unpaid balance of [sic] would accrue interest at a rate of 6.5% per annum beginning on October 1, 2021.

**ANSWER**:  Defendants deny the allegations of Paragraph 28.  Specifically, while Miles and Lakeview Biodiesel both executed versions of a document entitled "PROMISSORY NOTE secured by Deed of Trust" that indicated the unpaid balance of the Note would accrue interest, Defendants deny that a valid contract was formed because there was never

- 7 -

a meeting of the minds on all terms in the Promissory Note and there was never a mirror-image acceptance of the Promissory Note by both parties.

29.    Lakeview Biodiesel agreed to pay the full balance of the Promissory Note, with accrued interest and late fees, by October 1, 2022.

**ANSWER**:  Defendants deny the allegations of Paragraph 29.  Specifically, while Miles and Lakeview Biodiesel both executed versions of a document entitled "PROMISSORY NOTE secured by Deed of Trust" that stated "The full balance of this Note, including *any* accrued interest and late fees, is due and payable on October 1, 2022…" (emphasis added), Defendants deny that a valid contract was formed because there was never a meeting of the minds on all terms in the Promissory Note and there was never a mirror-image acceptance of the Promissory Note by both parties.

30.    Lakeview Biodiesel failed to pay the full balance of the Promissory Note, with accrued interest and late fees, by October 1, 2022.

**ANSWER**:  Defendants deny the allegations of Paragraph 30.  Specifically, Defendants deny that a valid contract was formed because there was never a meeting of the minds on all terms in the Promissory Note and there was never a mirror-image acceptance of the Promissory Note by both parties.

31.    Lakeview Biodiesel is in default.

**ANSWER**:  Paragraph 31 sets forth a legal conclusion that does not require an answer by Defendants, but to the extent that an answer is required, Defendants deny Paragraph 31.

32.    In a letter dated October 4, 2022, Miles informed Lakeview Biodiesel that it was in default.   Lakeview Biodiesel failed to cure the default.

- 8 -

**ANSWER**:  Defendants admit that in a letter dated October 4, 2022, Miles alleged that Lakeview Biodiesel was in default.  Defendants deny that Lakeview Biodiesel was in default or that it failed to cure any default.  Defendants deny that a valid contract was formed because there was never a meeting of the minds on all terms in the Promissory Note and there was never a mirror-image acceptance of the Promissory Note by both parties.

33.    Under the terms of the Promissory Note, and because Lakeview Biodiesel is in default, interest is accruing at the maximum rate allowed by law.

**ANSWER**:  Paragraph 33 sets forth a legal conclusion that does not require an answer by Defendants, but to the extent that an answer is required, Defendants deny Paragraph 33.

34.    Under the terms of the Promissory Note, and because Lakeview Biodiesel is in default, Miles is entitled to recover the full unpaid balance, interest, and all attorneys' fees and costs, including but not limited to the fees and costs incurred in this lawsuit.

**ANSWER**:  Defendants deny Paragraph 34.  While the "PROMISSORY NOTE secured by Deed of Trust" states that the prevailing party in any lawsuit to enforce the Note after a default is entitled to recover its *reasonable* attorneys' fees and costs incurred in the proceeding, Defendants deny that a valid contract was formed because there was never a meeting of the minds on all terms in the Promissory Note and there was never a mirror-image acceptance of the Promissory Note by both parties.

Fraudulent Inducement

35.    Miles was fraudulently induced by Lakeview Energy to enter into the Promissory Note.

**ANSWER**:  Defendants deny the allegations of Paragraph 35.

- 9 -

36.     In the weeks leading up to the execution of the Promissory Note, representatives of Lakeview Energy made misrepresentations and omissions of fact to Miles to induce her to loan $250,000 to Lakeview Biodiesel.

**ANSWER**:  Defendants deny the allegations of Paragraph 36.

37.     For example, on July 28, 2021, Steve Meyer, Chief Financial Officer and Board Director of Lakeview Energy, sent an email to Miles' representative. The purpose of the email was to provide assurances to Miles that her $250,000 loan would be secured by necessary collateral.

**ANSWER**:  Defendants deny Paragraph 37 as alleged.  Defendants specifically state that, as indicated in its title, the "PROMISSORY NOTE [was] secured by Deed of Trust." Additionally, Lakeview Biodiesel provided Damien Quinn, Miles' husband and her "representative" as alleged in Paragraph 37,  with additional notice as follows:  "It's also important to note that AgCredit hold a 1st lien security interest in Lakeview Bio-Diesel so this note will rank behind it."

38.     Specifically, Mr. Meyer stated that he "added equipment, fixtures and land to the security section" of the Promissory Note. Again, Lakeview Energy's purpose of "add[ing]" these purported assets to the security section of the Promissory Note was to convince Miles that her $250,000 loan was protected if Lakeview Biodiesel defaulted on the loan.

**ANSWER**:  Defendants deny Paragraph 38 as alleged.  Defendants specifically state that, as indicated in its title, the "PROMISSORY NOTE [was] secured by Deed of Trust." Additionally, Lakeview Biodiesel provided Damien Quinn, Miles' husband and her "representative" as alleged in Paragraph 37,  with additional notice as follows:  "It's also

important to note that AgCredit hold a 1st lien security interest in Lakeview Bio-Diesel so this note will rank behind it."

39.    Based upon information and belief, in making these affirmative representations to Miles, Lakeview Energy intentionally or recklessly withheld information that Lakeview Energy had previously pledged these same assets as security to another lender, which gave that lender a priority interest in the security.

**ANSWER**:  Defendants deny the allegations of Paragraph 39.  Defendants specifically state that, as indicated in its title, the "PROMISSORY NOTE [was] secured by Deed of Trust."  Defendants further state that in the Deed of Trust, Plaintiff expressly acknowledged the existence of a prior Deed of Trust regarding the assets at issue and agreed that the Deed of Trust that secured the Promissory Note was subordinate to the prior Deed of Trust. Additionally, Lakeview Biodiesel provided Damien Quinn, Miles' husband and her "representative" as alleged in Paragraph 37,  with additional notice as follows:  "It's also important to note that AgCredit hold a 1st lien security interest in Lakeview Bio-Diesel so this note will rank behind it."

40.    Lakeview Energy made similar fraudulent omissions and misrepresentations of fact in emails and drafts of the Promissory Note that it sent to Miles. In those drafts – which were intended to induce Miles to enter the Promissory Note – Lakeview Energy represented: "The Borrower [Lakeview Biodiesel] agrees to provide accounts receivable and inventory, equipment, fixtures and land at 607 W. Fowler Rd., Moberly, MO 65270 referred to as the 'Security', which shall transfer to the possession and ownership of the Lender [Miles] IMMEDIATELY if this Note should be in default." (Capitalization in original.)

**ANSWER**:  Defendants deny the allegations of Paragraph 40.  Defendants specifically state that, as indicated in its title, the "PROMISSORY NOTE [was] secured by Deed of Trust."  Defendants further state that in the Deed of Trust, Plaintiff specifically acknowledged the existence of a prior Deed of Trust regarding the assets at issue in the Deed of Trust that secured the Promissory Note, and Plaintiff also expressly agreed that the Deed of Trust that secured the Promissory Note was subordinate to the prior Deed of Trust.

41.    Lakeview Energy knew that because it had previously pledged the same assets as security to another lender, these assets would not "IMMEDIATELY" transfer to Miles upon Lakeview Biodiesel's default on the Promissory Note.

**ANSWER**:  Defendants deny Paragraph 41 as alleged.  Defendants specifically state that, as indicated in its title, the "PROMISSORY NOTE [was] secured by Deed of Trust."  Defendants further state that the Deed of Trust specifically identified the existence of a prior Deed of Trust regarding the assets at issue and also expressly stated that the Deed of Trust that secured the Promissory Note was subordinate to the prior Deed of Trust.  Additionally, Lakeview Biodiesel provided Damien Quinn, Miles' husband and her "representative" as alleged in Paragraph 37,  with additional notice as follows:  "It's also important to note that AgCredit hold a 1st lien security interest in Lakeview Bio-Diesel so this note will rank behind it."

COUNT I
BREACH OF CONTRACT
(Against Lakeview Biodiesel)

42.    Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein and further states as follows.

**ANSWER**:  Defendants incorporate by reference all of the foregoing answers to the foregoing paragraphs as if fully set forth herein.

43.    Miles and Lakeview Biodiesel entered into a valid and enforceable contract – the Promissory Note.

**ANSWER**:  Defendants deny the allegations of Paragraph 43.

44.    Miles fully performed her obligations under the Promissory Note.

**ANSWER**:  Defendants deny the allegations of Paragraph 44 because no valid and enforceable contract was formed when the parties signed different versions of the "PROMISSORY NOTE secured by Deed of Trust."

45.    Lakeview Biodiesel breached the contract by failing to pay all amounts due under the Promissory Note.

**ANSWER**:  Paragraph 45 sets forth a legal conclusion that does not require an answer by Defendants, but to the extent that an answer is required, Defendants deny Paragraph 45.

46.    As a result of the breach, Miles suffered damages.

**ANSWER**:  Defendants deny the allegations of Paragraph 46 because no valid and enforceable contract was formed when the parties signed different versions of the "PROMISSORY NOTE secured by Deed of Trust," and therefore no breach could occur.

COUNT II
FRAUD
(Against Lakeview Energy and Lakeview Biodiesel)

47.    Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein and further states as follows.

**ANSWER**:  Defendants incorporate by reference all of the foregoing answers to the foregoing paragraphs as if fully set forth herein.

- 13 -

48.     Lakeview Energy and Lakeview Biodiesel ("Lakeview Defendants") made material representations of fact with knowledge that the representations were not true.

**ANSWER**:  Defendants deny the allegations of Paragraph 48.

49.     Lakeview Defendants also knowingly made material omissions of fact.

**ANSWER**:  Defendants deny the allegations of Paragraph 49.

50.     Lakeview Defendants had a duty to disclose the truth to Miles because, among other reasons, there was a relationship of trust and confidence between the parties, and the Lakeview Defendants had superior knowledge not within the fair and reasonable reach of Miles.

**ANSWER**:  Defendants deny the allegations of Paragraph 50.

51.     Further, Lakeview Defendants had a duty to disclose the omitted facts because they made affirmative misrepresentations of fact to Miles.

**ANSWER**:  Defendants deny the allegations of Paragraph 51.

52.     Lakeview Defendants made the misrepresentations and omissions with the intent that the misrepresentations and omissions would be relied upon by Miles.

**ANSWER**:  Defendants deny the allegations of Paragraph 52.

53.     Miles had the right to rely upon, and did, in fact, rely upon, the Lakeview Defendants' misrepresentations and omissions.

**ANSWER**:  Defendants deny the allegations of Paragraph 53.

54.     Miles was not aware that the Lakeview Defendants' misrepresentations and omissions were untrue when they were made.

**ANSWER**:  Defendants deny the allegations of Paragraph 54.  Defendants further state that, as indicated in its title, the "PROMISSORY NOTE [was] secured by Deed of Trust." Additionally, Plaintiff specifically acknowledged the existence of a prior Deed of Trust

- 14 -

regarding the assets at issue in the Deed of Trust that secured the Promissory Note, and Plaintiff also expressly agreed that the Deed of Trust that secured the Promissory Note was subordinate to the prior Deed of Trust.

55.    Lakeview Defendants' misrepresentations and omissions caused injury and damages to Miles.

**ANSWER**:  Defendants deny the allegations of Paragraph 55.

## GENERAL DENIAL

All allegations in the Complaint that are not specifically admitted herein are denied. Defendants further deny that Plaintiff is entitled to any relief requested in the Prayer for Relief and denies any and all allegations set forth therein.

## PRAYER FOR RELIEF

FURTHER ANSWERING, Defendants deny that Plaintiff is entitled to any relief from Defendants as sought in the unnumbered *ad damnum* ("Wherefore") clause at the end of the Complaint.  Defendants further deny that any relief should be awarded against Defendants pursuant to the allegations in the Complaint.

## JURY DEMAND

Defendants admit that Plaintiff demands a jury trial, but denies that there are any triable issues.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

Defendants hereby assert the following additional or affirmative defenses, reserving the right to amend this Answer to assert any and all other defenses that may become apparent or available during the course of these proceedings.  By asserting the following defenses, arguments or claims, Defendants do not waive their right to require Plaintiff to meet her burden regarding the

applicability, existence, or proof of any of the enumerated defenses.  In other words, by asserting any such defenses, Defendants do not assume a burden of proof they otherwise would not bear.

FIRST DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, by various equitable doctrines, including, without limitation, the doctrines of estoppel, laches, unclean hands, and/or waiver.

THIRD DEFENSE

The Promissory Note at issue in this Complaint, by its title, indicates that it is secured by a Deed of Trust.  *See* **Exhibit A** attached hereto.

FOURTH DEFENSE

In the Deed of Trust, which secures the Promissory Note at issue in the Complaint, Plaintiff (as the Beneficiary), specifically acknowledged the existence of a prior Deed of Trust regarding the assets at issue, and "acknowledge[d] and agreed[d] that this Deed of Trust is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage/Deed of Trust and to all advances heretofore made or which may hereafter be made pursuant to the First Mortgage/Deed of Trust…."  *See* **Exhibit B** attached hereto.

FIFTH DEFENSE

Plaintiff's damages, if any, are caused by the actions of others that are not the responsibility of, or subject to the control of, Defendants.

**WHEREFORE**, Defendants respectfully request that Plaintiff's Complaint be dismissed with Plaintiff taking nothing thereby, that Defendants be awarded their costs incurred herein, and that this Court provide any other or further relief as it deems necessary and proper.

- 16 -

## COUNTERCLAIMS AGAINST CHERYL MILES

Defendants Lakeview Biodiesel LLC ("Lakeview Biodiesel") and Lakeview Energy LLC ("LVE") (collectively, the "Defendants") hereby state their Counterclaims against Plaintiff Cheryl Miles ("Plaintiff" or "Miles") as follows:

56.    On information and belief, Miles is a resident and citizen of the state of Utah.

57.    Lakeview Biodiesel is a limited liability company formed under the laws of Delaware with its principal place of business in Chicago, Illinois.  Lakeview Biodiesel is registered to do business in Missouri.  None of Lakeview Biodiesel's members is a resident or citizen of Utah.

58.    LVE is a limited liability company formed under the laws of Delaware with its principal place of business in Chicago, Illinois.  LVE is registered to do business in Missouri. None of LVE's members is a resident or citizen of Utah.

59.    This Court has personal jurisdiction over Miles because she is the Plaintiff in the underlying Complaint, and the Counterclaims arise out of the same facts and are related to the matters at issue in the Complaint.

60.    This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a) as there is complete diversity between Plaintiff and Lakeview Biodiesel and LVE, including their members, where applicable, and the amount in controversy exceeds $75,000.

61.    This Court is a proper venue for this civil action pursuant to 28 U.S.C. §1391(b) and the Local Rules.

62.    In or about July 2021, Lakeview Biodiesel and Damien Quinn ("Quinn"), as President of Verliant Energy, Inc. ("Verliant") and as the managing member of Texas Transfer & Recycle Centers, LLC ("Textar"), entered into negotiations regarding a promissory note, whereby

Verliant would loan Lakeview Biodiesel $250,000 for Quinn/Textar to use to restart and to test the inputs and outputs of Lakeview Biodiesel's Moberly, Missouri facility (the "Facility"), with the ultimate goal of selling the resulting biodiesel in the market.

63.    The first draft of the purported promissory note was a generic form that Lakeview Biodiesel and Quinn/Verliant attempted to modify.

64.    In August 2021, after most of the terms had been agreed upon for a promissory note, Quinn/Verliant changed the identity of the lender from Verliant to Cheryl Miles.

65.    Even after Miles was listed as the lender in the purported promissory note, all of Lakeview Biodiesel's communications regarding same were still with Quinn, not Miles, and Quinn used his "damien@verliantenergy.com" email address in all of those communications with Lakeview Biodiesel.

66.    In the Complaint, Miles referred to Quinn as her "representative" regarding communications with Lakeview Biodiesel regarding the purported promissory note.

67.    Also in August 2021, Miles introduced a Deed of Trust into the transaction for the first time in order to secure the purported promissory note.  Miles provided Lakeview Biodiesel with the first draft of the deed of trust, which appears to have been obtained from "Deeds.com."

68.    Section 20 of the Deed of Trust provided by Miles contained several Subordination provisions, expressly recognizing that: a) it was subject to and subordinate in all respects to the First Mortgage/Deed of Trust on the property at issue; b) that the terms of the First Mortgage/Deed of trust are paramount and controlling and that they supersede any terms and provisions of Miles' deed of trust; and c) that the lien created by Miles' deed of trust would be released upon foreclosure or sale arising from a default under the First Mortgage/Deed of Trust.

69.    On August 27, 2021, Lakeview Biodiesel expressly told Quinn/Verliant, as Plaintiff Miles' representative, the following regarding the promissory note they were negotiating:  "It's also important to note that AgCredit hold[s] a 1st lien security interest in Lakeview Bio-Diesel so this note will rank behind it."

70.    On September 23, 2021, Lakeview Biodiesel sent a signed promissory note to Quinn, as a representative of Miles, that stated (emphasis added): "For the Promissory note, I also updated the date to Oct 1 and included language on a cure period which I had requested a few weeks back.  You can update these in your master agreement and resend or sign as is."

71.    Quinn/Miles did not sign the partially executed promissory note "as is," nor did they update the master agreement to include Lakeview Biodiesel's changes.

72.    On October 12, 2021, Miles (or Quinn on behalf of Miles) wired $187,000 to Lakeview Biodiesel.

73.    No promissory note or deed of trust had been finalized or executed by both Lakeview Biodiesel and Miles at the time that the $187,000 was wired to Lakeview Biodiesel.

74.    Quinn/Textar/Verliant retained $63,000 from the negotiated $250,000 in potential loan proceeds that had been discussed since the inception of the idea for the promissory note.

75.    On October 18, 2021, Quinn/Verliant, as a representative of Miles, sent Lakeview Biodiesel an email that stated that the deed needed a "wet" signature witnessed by a notary, which should be sent by Federal Express to Miles, who would counter-sign and overnight it back to Lakeview Biodiesel.  On October 19, 2021, Lakeview Biodiesel complied with that request and sent a "wet" copy of the notarized deed of trust to Miles via Federal Express.

76.    Additionally, on October 18, 2021, Lakeview Biodiesel again sent the previously executed signature page for the promissory note to Miles, via Quinn/Verliant, in PDF format

(because it did not need to be notarized), asking for a signature by Miles and indicating that it was the same version of the promissory note that had been signed by Lakeview Biodiesel weeks ago (i.e. with the cure period language added and other terms updated), but which had not been signed and returned by Miles.

77.    Unbeknownst to Lakeview Biodiesel, Miles did not sign the same version of the promissory note as Lakeview Biodiesel.  Miles allegedly crossed out the cure period language and then signed the promissory note.  However, Miles, through Quinn/Verliant, did not return the entire promissory note to Lakeview Biodiesel showing Miles' deletion of the cure period language.

78.    Miles, through Quinn/Verliant, kept Miles' deletion of the cure period language secret by only sending Lakeview Biodiesel the signature page for the promissory note, thereby implicitly misrepresenting that Miles had signed the same version of the promissory note as Lakeview Biodiesel.

79.    Because Lakeview Biodiesel believed the misrepresentation by Miles/Quinn/Verliant that the parties had signed the same version of the promissory note and that a valid contract had been formed, Lakeview Biodiesel paid Miles $4,062.50 on March 3, April 12, May 5, and August 5, 2022, for a total of $16,250.

80.    Lakeview Biodiesel would not have paid $16,250 to Miles if it had not been misled into believing that the parties had entered into a valid promissory note.

81.    The purported promissory note included a provision stating:  "Payments more than 60 days late will be considered a default of this agreement."

82.    On March 2, 2022, Miles directly communicated with Lakeview Biodiesel for the first time when she sent an email stating:  "This loan is now 61 days late and is in default.  The total amount of $250,000 is now due."

83.    A representative of Lakeview Biodiesel responded that same day stating:  "Please send payment instructions and the amount owed and I will get it paid ASAP."

84.    Miles stated that the total amount due through March 2, 2022 was $256,811.56, to which another representative for Lakeview Biodiesel responded that he had "reached out to Damien [Quinn] twice this week for wiring instructions for the interest payment and didn't receive the details. … I do accept it's late. … Bear in mind there is a cure period but regardless of that if there is a full repayment required we need to talk with Damien [Quinn] about how this repayment is funded…."

85.    Miles sent yet another email on March 2, 2022 informing Lakeview Biodiesel for the first time that:  "There is no 'cure period' per the agreement.  I declined your hand written addition of a 60-day cure period when I sent back the signed Promissory Note in October."

86.    Miles eventually accepted the interest payment being discussed in March 2022, but Miles also filed the Deed of Trust (**Exhibit B**) on March 7, 2022 as she had threatened to do in a previous email.

87.    In August 2022, Miles again emailed Lakeview Biodiesel alleging "default" related to a payment that was purportedly 30 days late and also because she believed the Facility was being marketed for sale.

88.    The interest payment at issue in August 2022 was made by Lakeview Biodiesel, and no further action was taken by Miles at that time.

89.    On September 23, 2022, Miles once again emailed Lakeview Biodiesel alleging default due to the marketing of the Facility and indicated that she intended to move forward with all available remedies.

- 21 -

90.    On October 18, 2022, Miles filed a UCC Financing Statement in Randolph County, Missouri, the location of Lakeview Biodiesel's facility.  A true and accurate copy of the UCC Financing Statement is attached hereto as **Exhibit C.**

91.    As shown by a comparison of the UCC Financing Statement with the purported "PROMISSORY NOTE secured by Deed of Trust" (**Exhibit A** hereto), the UCC Financing Statement is overly broad, misleading, and fraudulent.

## COUNTERCLAIM COUNT I
## FRAUD

92.    Defendants reallege and incorporate Paragraphs 56-91 of its Counterclaims as if fully set forth herein.

93.    On October 18, 2021, Miles represented to Lakeview Biodiesel that she signed the same version of the Promissory Note as Lakeview Biodiesel when she sent back only the signature page of the purported Promissory Note, and did not include the second page of that document, which would have shown her deletion of the cure period language.

94.    Miles representation was false.  As set forth in Miles' March 2, 2022 email, Miles crossed out the cure period language before she signed the purported Promissory Note.

95.    Miles' representation to Lakeview Biodiesel was material, as it caused Lakeview Biodiesel to believe that it had entered into a valid and enforceable contract with Miles, and because of that belief, Lakeview Biodiesel paid Miles $16,250 that it would not have paid if it knew there was no valid, enforceable contact between the parties.

96.    Miles knew that she had crossed out the cure period language before she signed the purported Promissory Note, and Miles knew that Lakeview Biodiesel would be relying upon her signature to convey that an agreement had been reached regarding the terms of the purported Promissory Note.

- 22 -

97.     Lakeview Biodiesel had no way to know and no reason to know that Miles had crossed out the cure period language before signing the purported Promissory Note and sending back only the signature page, and it was reasonable for Lakeview Biodiesel to rely on Miles' representation that she had signed the latest version of the purported Promissory Note when she sent back only the signature page.

98.     Lakeview Biodiesel was damaged by Miles' misrepresentations because, among other things, it paid Miles $16,250 that it would not have paid but for Miles' misrepresentations.

**COUNTERCLAIM COUNT II**
**VIOLATION OF MO. REV. STAT. §400.9-625**

99.     Defendants reallege and incorporate Paragraphs 56-98 of its Counterclaims as if fully set forth herein.

100.    Mo. Rev. Stat. §400.9-625(b) states:  "a person is liable for damages in the amount of any loss caused by a failure to comply with this article" which may include "loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing."

101.    Mo. Rev. Stat. §400.9-625(e) states:  "In addition to any damages recoverable under subsection (b), the debtor, consumer obligor, or person named as a debtor in a filed record, as applicable, may recover five hundred dollars in each case from a person" that fails to comply with various provisions of Article 400.9.

102.    Miles failed to comply with Article 400.9 of the Missouri Revised Statutes when she filed a UCC Financing Statement that was clearly overly broad and misleading as compared to the security interest she was purportedly granted in the alleged Promissory Note.

103.    Defendants have been damaged by Miles' failure to comply with Article 400.9 of the Missouri Revised Statutes.

- 23 -

## COUNTERCLAIM COUNT III
## SLANDER OF TITLE

104.    Defendants reallege and incorporate Paragraphs 56-103 of its Counterclaims as if fully set forth herein.

105.    Miles' statement regarding her alleged security interest, which she maliciously published via a UCC Financing Statement, was false.

106.    Defendants have been damaged by the publication of Miles' false UCC Financing Statement.

**WHEREFORE,** Defendants Lakeview Biodiesel, LLC and Lakeview Energy LLC pray for judgment against Plaintiff Cheryl Miles for all damages to which they are entitled to by law, including but not limited to:

a)  compensatory damages in an amount to be proven at trial;

b)  statutory damages;

c)  punitive damages;

d)  Defendants' attorney fees, costs and expenses incurred herein; and

e)  For any other and further relief as this Court deems just and proper.

## THIRD PARTY COMPLAINT AGAINST DAMIEN QUINN, TEXAS TRANSFER & RECYCLE CENTERS, LLC AND VERLIANT ENERGY, INC.

Third Party Plaintiffs Lakeview Biodiesel LLC ("Lakeview Biodiesel") and Lakeview Energy LLC ("LVE") (collectively, the "Lakeview Plaintiffs") hereby state their Third-Party Complaint against the Third Party Defendants Damien Quinn ("Quinn"), Texas Transfer & Recycle Centers, LLC ("Textar"), and Verliant Energy, Inc. ("Verliant"), as follows:

**PARTIES**

1.     Lakeview Biodiesel is a limited liability company formed under the laws of Delaware with its principal place of business in Chicago, Illinois.  Lakeview Biodiesel is registered to do business in Missouri.  None of Lakeview Biodiesel's members is a resident or citizen of Utah, Texas or California.  Lakeview Biodiesel is a division of Lakeview Energy LLC.

2.     Lakeview Energy LLC is a limited liability company formed under the laws of Delaware with its principal place of business in Chicago, Illinois. LVE is registered to do business in Missouri.  None of LVE's members is a resident or citizen of Utah, Texas, or California.  LVE is the parent company of Lakeview Biodiesel.

3.     On information and belief, Quinn is a resident and citizen of Texas.

4.     At all times relevant to the claims and allegations herein, Quinn acted as Plaintiff Cheryl Miles' ("Miles") representative in negotiations and communications with the Lakeview Plaintiffs.

5.     On information and belief, Textar is a Texas limited liability company with its principal place of business in Fort Worth, Texas.  On information and belief, none of Textar's members is a resident or citizen of Utah, California, Delaware, or Illinois.

6.     Quinn is the Managing Member of Textar.  At all times relevant to the claims and allegations herein, Quinn acted as Textar's representative in negotiations and communications with the Lakeview Plaintiffs.

7.     On information and belief, Verliant is a California corporation with its principal place of business in San Francisco, California.

8.      Quinn is the President of Verliant.  At all times relevant to the claims and allegations herein, Quinn acted as Verliant's representative in negotiations and communications with the Lakeview Plaintiffs.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Quinn because he worked at Lakeview Biodiesel's Moberly, Missouri facility to restart it and to test the inputs and outputs, which was the purpose of the funds transferred pursuant to the purported Promissory Note with Miles. Additionally, Quinn's work in Missouri, and the agreements and representations Quinn made to the Lakeview Plaintiffs regarding same, are the basis of the claims at issue in this Third Party Complaint.

10.      This Court has personal jurisdiction over Textar in this case because Quinn, its managing member, actively conducted business in Missouri, including at Lakeview Biodiesel's facility in Moberly, Missouri, relating to the claims at issue in the Third Party Complaint.

11.      This Court has personal jurisdiction over Verliant in this case because Quinn, its President, actively conducted business in Missouri, including at Lakeview Biodiesel's facility in Moberly, Missouri, relating to the claims at issue in the Third Party Complaint.

12.      This Court has subject matter jurisdiction of this civil action pursuant to 28 U.S.C. §1332(a) as there is complete diversity between the Lakeview Plaintiffs and the Third Party Defendants, including their members, where applicable, and the amount in controversy exceeds $75,000.

13.      This Court is a proper venue for this civil action pursuant to 28 U.S.C. §1391(b) and the Local Rules of this Court.

**OPERATIVE FACTS**

14.    Lakeview Biodiesel owns a biodiesel production facility in Moberly, Missouri (the "Facility").

15.    The Facility was shut down in 2019.

16.    In or about July 2021, Lakeview Biodiesel and Quinn, as President of Verliant, entered into negotiations regarding a promissory note, whereby Verliant would loan Lakeview Biodiesel $250,000 for Quinn/Textar to use to restart and to test the inputs and outputs of the Facility, with the ultimate goal of selling the resulting biodiesel in the market.

17.    Also in or about July 2021, Lakeview Biodiesel and Quinn, as the Managing Member of Textar, entered into negotiations regarding a "Feedstock Agreement," whereby Textar would be paid to provide feedstock (raw materials for biodiesel production, such as animal fats, used cooking oil, and biomass-based waste oil byproducts of the food industry) as inputs to the Facility and to provide its expertise and know how regarding use of that material and Textar's enzymatic processes to produce biodiesel.

18.    Brendon Spiers of Verliant provided the first draft of the Feedstock Agreement to facilitate the negotiations between Quinn/Textar and Lakeview Biodiesel.

19.    The first draft of the purported promissory note was a generic form that Lakeview Biodiesel and Quinn/Verliant attempted to modify.

20.    In August 2021, after most of the terms had been agreed upon for a promissory note, Quinn/Verliant changed the identity of the lender from Verliant to Miles. However, even after Miles was listed as the lender in the purported promissory note, all of Lakeview Biodiesel's communications regarding same were still with Quinn/Verliant, not Miles, and Quinn used his "damien@verliantenergy.com" email address in all communications with the

- 27 -

Lakeview Plaintiffs.  In the Complaint, Miles referred to Quinn as her "representative" regarding communications with the Lakeview Plaintiffs regarding the promissory note.

21.    Also in August 2021, Miles introduced into the transaction for the first time a Deed of Trust to secure the purported promissory note.  Miles provided Lakeview Biodiesel with the first draft of the deed of trust, which appears to have been obtained from "Deeds.com."

22.    Section 20 of the Deed of Trust provided by Miles contained several Subordination provisions, expressly recognizing that: a) it was subject to and subordinate in all respects to the First Mortgage/Deed of Trust on the property at issue; b) that the terms of the First Mortgage/Deed of trust are paramount and controlling and that they supersede any terms and provisions of Miles' deed of trust; and c) that the lien created by Miles' deed of trust would be released upon foreclosure or sale arising from a default under the First Mortgage/Deed of Trust.

23.    On August 27, 2021, Lakeview Biodiesel expressly told Quinn/Verliant, as Plaintiff Miles' representative, the following regarding the promissory note they were negotiating:  "It's also important to note that AgCredit hold[s] a 1st lien security interest in Lakeview Bio-Diesel so this note will rank behind it."

24.    Emails between Lakeview Biodiesel and Quinn/Textar/Verliant during this same time period recognize that the promissory note and feedstock agreement that were being negotiated were related and dependent upon one another.  In fact, in early September 2021, Lakeview Biodiesel refused to sign the feedstock agreement until the promissory note was also finalized and until all parties fully understood and agreed to the terms of the restart of the plant and the use of the funds generated by the promissory note regarding same.

25.    Part of those negotiations in September 2021 between Lakeview Biodiesel and Quinn/Textar/Verliant regarding the feedstock agreement were that, as originally discussed in

May 2021, during the initial twelve (12) weeks of Quinn/Textar attempting to restart the Facility, any profits achieved and any losses incurred would be shared 50/50 between Lakeview Biodiesel and Quinn/Textar.  During this time period, all of Quinn's emails relating to the feedstock agreement and to Textar continued to be signed as and transmitted from Quinn, President of Verliant.

26.    On September 23, 2021, Lakeview Biodiesel sent a signed promissory note and a signed feedstock agreement to Quinn, acting as a representative of Textar/Verliant and as a representative of Miles, that stated (emphasis added): "For the Promissory note, I also updated the date to Oct 1 and included language on a cure period which I had requested a few weeks back. You can update these in your master agreement and resend or sign as is."

27.    Quinn/Miles did not sign the partially executed promissory note "as is," nor did they update the master agreement to include Lakeview Biodiesel's changes.

28.    On September 27, 2021, Quinn, as a representative of Textar/Verliant and as a representative of Miles, sent Lakeview Biodiesel an email regarding the promissory note, the feedstock agreement, and issues relating to restarting the Facility and testing the inputs and outputs of the Facility.  Specifically, Quinn's email stated, among other things (emphasis added): "I'm, with your guys approval holding back $60,000 for outside oil supply which when Textar bills you will continually hold that amount to replenish that portion of the loan, when we get through this initial processing we will use Textar's own oil and the funds will be left in the loan or that portion repaid. The reason for this is for the next two weeks I will buy oil on spec as we initially have no way of either testing for or treating Sulphur. Ultimately it makes no difference to the bottom line."

- 29 -

29.    On October 12, 2021, Miles (or Quinn on behalf of Miles) wired $187,000 to Lakeview Biodiesel.

30.    No promissory note or deed of trust had been finalized or executed by both Lakeview Biodiesel and Miles at the time that the $187,000 was wired to Lakeview Biodiesel.

31.    Quinn/Textar/Verliant retained $63,000 from the negotiated $250,000 in potential loan proceeds that had been discussed since the inception of the idea for the promissory note.

32.    No feedstock agreement had been finalized or executed between Lakeview Biodiesel and Quinn/Textar/Verliant at the time the $187,000 was wired to Lakeview Biodiesel, and no agreement between Lakeview Biodiesel and Quinn/Textar/Verliant had been finalized or executed regarding the retention of the $63,000 by Quinn/Textar/Verliant.

33.    However, Lakeview Biodiesel and Quinn/Textar proceeded with the attempts to restart the Facility and to test the inputs and outputs of the Facility as if the Feedstock Agreement had been signed, and their communications reflected their adherence to the material terms therein.

34.    On October 18, 2021, Quinn/Verliant, as a representative of Miles, sent Lakeview Biodiesel an email that stated that the deed needed a "wet" signature witnessed by a notary, which should be sent by Federal Express to Miles, who would counter-sign and overnight it back to Lakeview Biodiesel.  On October 19, 2021, Lakeview Biodiesel complied with that request and sent a "wet" copy of the notarized deed of trust to Miles via Federal Express.

35.    Additionally, on October 18, 2021, Lakeview again sent the signed signature page for the promissory note to Miles, via Quinn/Verliant, in PDF format (because it did not need to be notarized), asking for a signature by Miles and indicating that it was the same version of the promissory note that had been signed by Lakeview Biodiesel weeks ago (which contained the cure period language and updated dates), but which had not signed and returned by Miles.

36.    Unbeknownst to Lakeview Biodiesel, Miles did not sign the same version of the promissory note as Lakeview Biodiesel.  Miles crossed out the cure period language and then signed the promissory note.  However, Miles, through Quinn/Verliant, did not return the entire promissory note to Lakeview Biodiesel showing Miles' deletion of the cure period language.

37.    Miles, through Quinn/Verliant, kept Miles' deletion of the cure period language secret by only sending Lakeview Biodiesel the signature page for the promissory note, thereby implicitly misrepresenting that Miles had signed the same version of the promissory note as Lakeview Biodiesel.

38.    Because    Lakeview    Biodiesel    believed    the    misrepresentation    by Miles/Quinn/Verliant that the parties had signed the same version of the promissory note and that a valid contract had been formed, Lakeview Biodiesel paid Miles $4,062.50 on March 3, April 12, May 5, and August 5, 2022, for a total of $16,250.

39.    Lakeview Biodiesel would not have paid $16,250 to Miles if it had not been misled into believing that the parties had entered into a valid promissory note.

40.    The purported promissory note included a provision stating:  "Payments more than 60 days late will be considered a default of this agreement."

41.    On March 2, 2022, Miles directly communicated with Lakeview Biodiesel for the first time when she sent an email stating:  "This loan is now 61 days late and is in default.  The total amount of $250,000 is now due."

42.    A representative of Lakeview Biodiesel responded that same day stating:  "Please send payment instructions and the amount owed and I will get it paid ASAP."

43.    Miles replied that the total amount due through March 2, 2022 was $256,811.56, to which another representative for Lakeview Biodiesel responded that he had "reached out to

Damien twice this week for wiring instructions for the interest payment and didn't receive the details. … I do accept it's late. … Bear in mind there is a cure period but regardless of that if there is a full repayment required we need to talk with Damien about how this repayment is funded…."

44.     Miles sent another email on March 2, 2022 informing Lakeview Biodiesel for the first time that: "There is no 'cure period' per the agreement.  I declined your hand written addition of a 60-day cure period when I sent back the signed Promissory Note in October."

45.     Miles eventually accepted the interest payment being discussed in March 2022, but Miles also filed the Deed of Trust on March 7, 2022 as she had threatened to do in her email.

46.     In or about May 2022, Lakeview Biodiesel and Quinn/Textar/Verliant determined that it was not feasible to make biodiesel at the Facility and that all efforts to do so should cease.

47.     Lakeview Biodiesel began its attempts to sell the Facility later that year.

48.     No saleable biodiesel that met specifications was ever produced at the Facility.

49.     Accordingly, pursuant to the terms of the unsigned Feedstock Agreement (**Exhibit D**), its 30-month term never commenced.   Section 5 of the Feedstock Agreement states: "Upon the satisfactory production of B100 ASTM D6751 biodiesel this Agreement shall automatically commence and extend for thirty months or until terminated by either party hereto…."

50.     Fortunately, Lakeview Biodiesel and Textar documented their prior agreement for the start up period, as initially discussed in May and September 2021 in a series of emails, and also in the unexecuted Feedstock Agreement: "Any losses incurred during this initial start up period [i.e. before the Feedstock Agreement commenced] will be shared 50:50 between both parties."  (*See* Exhibit D at Section 5).

- 32 -

51.     In August 2022, Miles again emailed Lakeview Biodiesel alleging "default" related to a payment that was purportedly 30 days late and also because she believed the Facility was being marketed for sale.

52.     The interest payment at issue in August 2022 was made by Lakeview Biodiesel, and no further action was taken by Miles at that time.

53.     On September 23, 2022, Miles once again emailed Lakeview Biodiesel alleging default due to the marketing of the Facility and indicated that she intended to move forward with all available remedies.

54.     That same day, Lakeview Biodiesel emailed Quinn/Textar/Verliant with a breakdown of costs incurred during the attempted restart and testing of the Facility, totaling $413,557.  Lakeview Biodiesel reminded Quinn/Textar/Verliant of their prior agreement that any losses during that time period were to be split 50/50, and asked Quinn/Textar/Verliant to reimburse Lakeview Biodiesel in the amount of $206,778.

55.     Quinn/Textar/Verliant refused to cover 50% of the losses, and Miles was not paid $187,000.

56.     On or about October 7, 2022, Damien/Textar/Verliant had at least four loads of oil (2 brown and 2 UCO) and at least 4,000 gallons of "off spec fuel" picked up from the Facility.

57.     Damien/Textar/Verliant did not account for the proceeds, if any, of those materials or remit any proceeds or profit from them to Lakeview Biodiesel.

### THIRD-PARTY COMPLAINT COUNT I
### CONTRIBUTION
### (AGAINST QUINN, TEXTAR, AND VERLIANT)

58.     Lakeview Plaintiffs reallege and incorporate Paragraphs 1 – 57 of the Third Party Complaint as if fully set forth herein.

59.    Quinn, Textar and/or Verliant are liable to Miles for the claims and damages she has alleged in the Complaint, if they can be proven.

60.    The purpose of the proceeds of the purported Promissory Note was to fund the efforts of Quinn/Textar/Verliant to restart and test the Facility.

61.    Quinn/Textar/Verliant retained $63,000 of the $250,000 discussed in the purported Promissory Note.

62.    If the Lakeview Plaintiffs are found to be liable to Miles, they will suffer damages due to the actions and/or omissions of Quinn, Textar and/or Verliant.

63.    If the Lakeview Plaintiffs are found to be liable to Miles, then Quinn, Textar and/or Verliant are liable to the Lakeview Plaintiffs for contribution.

## THIRD-PARTY COMPLAINT COUNT II
## IMPLIED CONTRACT
## (AGAINST QUINN AND TEXTAR)

64.     Lakeview Plaintiffs reallege and incorporate Paragraphs 1 – 63 of the Third Party Complaint as if fully set forth herein.

65.    Quinn, as the managing member of Textar, entered into certain agreements with Lakeview Biodiesel regarding Quinn/Textar's attempts to restart the Facility and to test the input and outputs of the Facility, including that Quinn and/or Textar would be responsible for 50% of any losses incurred during the time period before the plant was actually restarted and producing saleable biodiesel.

66.    The purpose of the proceeds of the purported Promissory Note was to fund the efforts of Quinn/Textar to restart and test the Facility.

67.    Quinn/Textar incurred at least $413,557 in costs during the time they were trying to restart and test the Facility that were paid by Lakeview Biodiesel.

68.    Quinn/Textar knew at the time that the costs were incurred that they would owe Lakeview Biodiesel one-half of those amounts if Quinn and Textar were not able to produce saleable biodiesel from the Facility.

69.    Quinn/Textar were not able to produce saleable biodiesel from the Facility at any time and the efforts to do so were abandoned in or about May 2022.

70.    Pursuant to their agreement, Lakeview Biodiesel asked Quinn/Textar to reimburse it in the amount of $206,778, which is 50% of the losses incurred by Lakeview Biodiesel.

71.    Quinn/Textar refused to reimburse Lakeview Biodiesel for 50% of the losses Lakeview Biodiesel incurred related to the Facility.

72.    Quinn/Textar accepted and retained the benefit of Lakeview Biodiesel's payments for the costs incurred when Quinn/Textar attempted to restart and test the Facility.

73.    Quinn/Textar's continued refusal to reimburse Lakeview Biodiesel as previously agreed is inequitable.

### THIRD-PARTY COMPLAINT COUNT III
### FRAUD
### (AGAINST QUINN AND VERLIANT)

74.    Lakeview Plaintiffs reallege and incorporate Paragraphs 1 – 73 of the Third Party Complaint as if fully set forth herein.

75.    In or about July 2021, Lakeview Biodiesel and Quinn, as President of Verliant, entered into negotiations regarding a promissory note.

76.    In August 2021, after most of the terms had been agreed upon for a promissory note, Quinn/Verliant changed the identity of the lender from Verliant to Miles.

77.    Even after Miles was listed as the lender in the purported promissory note, all of Lakeview Biodiesel's communications regarding the purported promissory note were still with

Quinn, not Miles, and Quinn used his "damien@verliantenergy.com" email address in those communications with the Lakeview Plaintiffs.

78.    On October 18, 2021, Quinn/Verliant represented to Lakeview Biodiesel that Miles signed the same version of the Promissory Note (with the cure period language added) when Quinn/Verliant sent back only the signature page of the purported Promissory Note, not the second page which would have shown Miles deletion of the cure period language.

79.    That representation by Quinn/Verliant was false.  Miles crossed out the cure period language before she signed the purported Promissory Note.

80.    That representation by Quinn/Verliant to Lakeview Biodiesel was material, as it caused Lakeview Biodiesel to believe that it had entered into a valid and enforceable contract with Miles, and it proceeded to pay Miles $16,250 that it would not have paid if it knew there was no valid, enforceable contact between the parties.

81.    Quinn/Verliant knew that Miles had crossed out the cure period language before Miles signed the purported Promissory Note, and Quinn/Verliant knew that Lakeview Biodiesel would be relying upon Miles' signature to convey that an agreement had been reached regarding the terms of the purported Promissory Note.

82.    Quinn/Verliant needed the Promissory Note to be accepted by both Miles and Lakeview Biodiesel so that the funding for Quinn/Verliant to attempt to restart and to test the Facility could proceed, which could result in Quinn/Verliant receiving 50% of the profits once saleable biodiesel was produced at the Facility.

83.    Lakeview Biodiesel had no way to know and no reason to know that Miles had crossed out the cure period language before signing the purported Promissory Note and having Quinn/Verliant send back only the signature page, and it was reasonable for Lakeview Biodiesel

to rely on Quinn/Verliant/Miles' representations that Miles had signed the latest version of the purported Promissory Note when Quinn/Verliant sent back only the signature page.

84.    Lakeview Biodiesel was damaged by Quinn/Verliant's misrepresentations because, *inter alia*, it paid Miles $16,250 that it would not have paid but for Miles' misrepresentations.

### THIRD-PARTY COMPLAINT COUNT IV
### UNJUST ENRICHMENT
### (AGAINST QUINN, TEXTAR, AND VERLIANT)

85.    Lakeview Plaintiffs reallege and incorporate Paragraphs 1 – 84 of the Third Party Complaint as if fully set forth herein.

86.    Quinn/Textar/Verliant negotiated a loan for a purported Promissory Note in the amount of $250,000, which was modified by Lakeview Biodiesel to state that the available funds were "up to" $250,000.

87.    Miles or her representative wired $187,000 to Lakeview Biodiesel before the final terms of the purported Promissory Note were agreed upon and before any version of the Promissory Note was signed by both parties.

88.    Quinn/Textar/Verliant retained $63,000 from Miles that was never transmitted to Lakeview Biodiesel.

89.    Quinn/Textar/Verliant promised Lakeview Biodiesel that once the initial loads of inputs were received and processed at the Facility, the $63,000 portion of the "loan" would be replenished to Miles or delivered to Lakeview Biodiesel.

90.    Quinn/Textar/Verliant did not ever replenish the $63,000 portion of the loan to Miles or deliver the $63,000 to Lakeview Biodiesel.

91.    Quinn/Textar/Verliant retained the $63,000 for their own benefit.

92.     Quinn/Textar/Verliant also incurred improper expenses relating to the Facility and submitted expense reports to Lakeview Biodiesel for those expenses, which Lakeview Biodiesel paid to Quinn/Textar/Verliant.

93.     Lakeview Biodiesel did not obtain any benefit from the payment of those expenses to Quinn/Textar/Verliant or from the $63,000 that Quinn/Textar/Verliant retained from the proceeds of the purported Promissory Note.

94.     Quinn/Textar/Verliant retained all benefit from those expenses that were paid by Lakeview Biodiesel.

95.     Lakeview Biodiesel suffered damages as a result of the actions and omissions of Quinn/Textar/Verliant.

96.     It would be inequitable and unjust for Quinn/Textar/Verliant to retain the benefits of those funds under the circumstances.

**WHEREFORE**, Third Party Plaintiffs Lakeview Biodiesel, LLC and Lakeview Energy LLC pray for judgment against Third Party Defendants for all damages to which they are entitled to by law, including but not limited to:

a)     contribution in the full amount that Defendants/Third Party Plaintiffs may be held liable to Plaintiff Cheryl Miles;

b)     compensatory damages in an amount to be proven at trial;

c)     punitive damages;

d)     Defendants' attorney fees, costs and expenses incurred herein; and

e)     For any other and further relief as this Court deems just and proper.

Date:  June 6, 2023                              Respectfully submitted,

> **THOMPSON COBURN LLP**
>   By:  /s/   *Matthew D. Guletz*
>   Matthew D. Guletz, #57410MO
>   One U.S. Bank Plaza, Suite 2700
>   St. Louis, Missouri 63101
>   (314) 552-6000 (P) / (314) 552-7000 (F)
>   *mguletz@thompsoncoburn.com*
>
> -and-
>
> **DORSEY & WHITNEY LLP**
>   Angela E. Dralle (admitted pro hac vice)
>   801 Grand Ave., Suite 4100
>   Des Moines, Iowa  50309-2790
>   (515) 283-1000 (P) / (515) 283-1060 (F)
>   *dralle.angela@dorsey.com*
>
> **ATTORNEYS FOR LAKEVIEW
> BIODIESEL LLC AND LAKEVIEW
> ENERGY LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2023 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Matthew D. Guletz*

## **VERIFICATION**

I, Steve Meyer, am the CFO for Lakeview Biodiesel LLC and the CFO for Lakeview Energy LLC, and I hereby certify under penalty of perjury and pursuant to the laws of Missouri that the foregoing statements in Defendants' Second Amended Answer to the Complaint, Affirmative Defenses, Counterclaims against Cheryl Miles and Third-Party Claims against Damien Quinn, Texas Transfer & Recycle Centers, LLC and Verliant Energy, Inc. are all either (1) known to me to be true based upon my own personal knowledge, or (2) believed by me to be true based upon information obtained by me from the ordinary business records of Defendants and from other sources in the regular and normal performance of my duties or in the course of developing the foregoing document.

Dated this 2nd day of June, 2023.

Steve Meyer
CFO for Lakeview Biodiesel LLC
CFO for Lakeview Energy LLC

- 40 -